*Formatted for Electronic Distribution*                                                      *For Publication*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

In re:

    **Raymond M. Spisak**
        **Debtor.**

Filed & Entered
On Docket

01/12/07

Chapter 7 Case
# 06-10511

*Appearances:*   *Michelle Kainen, Esq.*   *Jennifer Emens-Butler, Esq.*
                         *White River Junction,*   *Bethel, VT*
                         *Attorney for Debtor*   *Attorney for Trustee*

**MEMORANDUM OF DECISION**
**GRANTING MOTION TO RECONSIDER**
**AND VACATING ORDER GRANTING FEE WAIVER**

The Trustee in this case asks the Court to vacate the filing fee waiver it granted to the Debtor. The facts of this case are not extraordinary but since the issue arises under the new fee waiver provision of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), see Pub.L. 109-8, 119 Stat. 23 (2005), and there has been little case law on the topic, the Court issues a written memorandum of decision to set forth its interpretation of the fee waiver statute and the analysis it applies when determining whether to grant or vacate a fee waiver.

**Procedural Background**

On November 2, 2006, the Debtor filed a chapter 7 petition and an application for a waiver of the chapter 7 filing fee. On November 8, 2006, the Court entered an order granting the application. On November 21, 2006, the chapter 7 trustee (the "Trustee") filed a motion for reconsideration of that order. The Trustee argued that the Debtor was not entitled to a waiver because the Debtor could afford to pay the filing fee in installments "with a reasonable reduction of his non essential expenditures or by application of his available assets" (doc. # 10). To support this conclusion, the Trustee pointed to information in the Debtor's schedules that, as of the date of the filing, the Debtor (i) had $350 cash in a joint checking account; (ii) had paid his attorney $400 prior to filing; (iii) was spending $75 per month for recreation and entertainment and $19 per month for cable television; and (iv) had monthly net disposable income in the amount of $97.

The Debtor filed an objection to the motion for reconsideration (the "Objection"), countering that he could not afford to pay the filing fee, even in installments (doc. # 11). On December 19, 2006, this Court held a hearing on the Trustee's motion to reconsider and the Debtor's Objection. The Debtor's counsel and the Trustee questioned the Debtor and, based upon that testimony, the Court makes the following findings of fact. The 66-year old Debtor suffers from carpal tunnel syndrome and poor vision, and therefore is no longer able

to work as a house painter. He resides with his wife in a mobile home. His wife receives unemployment which will last about six more weeks. His only income is from Social Security, which he receives on the fourth Wednesday of each month. He drives a 1992 Buick, and uses it only for grocery shopping and doctor visits. The car is so unreliable that his attorney had to drive him to the court appearance in this matter. The roof of his mobile home leaks. Because he cannot afford the $3,000 cost of repair, he regularly paints over the areas where the roof leaks. His wife is in poor health (although he did not specifically describe her condition). Neither the Debtor nor his wife has health insurance, and they sometimes use money set aside for recreation or other budget items to pay for doctor visits.

## Jurisdiction

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 157(b)(2)(A).

## Discussion

The Bankruptcy Code establishes a two-pronged test to determine eligibility for a waiver of the chapter 7 bankruptcy case filing fee:

> Under the procedures prescribed by the Judicial Conference of the United States, the district court or the bankruptcy court may waive the filing fee in a case under chapter 7 of title 11 for an individual if the court determines that such individual has income less than 150 percent of the income official poverty line . . . applicable to a family of the size involved <u>and</u> is unable to pay that fee in installments. . . .

28 U.S.C. § 1930(f)(1) (emphasis added). The Debtor bears the burden of proving by a preponderance of the evidence that his circumstances satisfy the requirements of the fee waiver provision. <u>In re Burr</u>, 344 B.R. 234, 236 (Bankr. W.D.N.Y. 2006); <u>In re Nuttall</u>, 334 BR 921, 923 (Bankr. W.D. Mo 2006). Thus, the Debtor must establish both that his or her income is below 150% of the poverty line and that he or she is unable to pay the filing fee in installments. This Court has previously ruled that the determination of the ability to pay is properly made by reference to the totality of the circumstances. In re <u>Kauffman</u>, __ B.R. __, 2006 WL 3017316, * 3 (Bankr. D.Vt. Oct. 24, 2006).

According to the Department of Health and Human Services 2006 Poverty Level Guidelines,[1] the poverty income for a family of two is $13,200. One hundred fifty percent of that guideline is $19,800 annually or $1,650 per month. The Debtor's Schedule I indicates he has a monthly income of $1,025 and no evidence was offered to question or contradict that income figure. The Court therefore concludes that the Debtor has established eligibility for a waiver under the first prong of the fee waiver test. <u>See</u> § 1930(f)(1). The Court now turns to the dispositive question: whether the Debtor has satisfied the second prong of the test, namely that he is unable to pay the filing fee in installments.

---

[1] The 2006 HHS Poverty Level Guidelines are available at http://aspe.hhs.gov/poverty/06fedreg.htm.

2

Congress appears to have envisioned that a debtor would file a fee waiver application at the same time he or she files a bankruptcy petition, see Fed. R. Bankr. P. 1006, and that the Court would promptly rule on the application. Kauffman, 2006 WL 3017316 at *2; 28 U.S.C. § 1930(f)(1). Neither the Code, the Rules, nor the waiver form requires that the debtor serve any party with notice of the application. Thus, this Court begins its review of a fee waiver application by reference solely to the Debtor's representations in the application and the schedules. If the Court finds that the application and schedules clearly establish the debtor's eligibility for a waiver, the Court will grant it, subject to the right of a party in interest to file a motion seeking revocation of the waiver based upon facts indicating that the fee waiver was not warranted.[2] If, by contrast, the application and schedules do not clearly establish the debtor's eligibility for a waiver, the Court will either deny the application or, if it deems further evidence is required in order to discern eligibility, set a hearing. A hearing will also be set if a waiver was granted and a party in interest files a motion to vacate the waiver. Any hearing on a fee waiver will be set on notice to the case trustee and United States Trustee. At the hearing, the debtor and any party opposing the waiver will be given an opportunity to appear and present arguments.

> This Court has previously ruled that it will revoke a fee waiver if
>
> (1) the debtor has notice that the fee waiver may be revoked if facts or circumstances are discovered during the administration of the case which demonstrate the waiver was unwarranted; (2) such facts or circumstances are properly brought before the Court; (3) the debtor is given notice of the alleged change in circumstances and eligibility, and an opportunity to be heard; and (4) the Court concludes that, based upon the new information, the debtor does not qualify for a waiver under the two-pronged test of §1930(f)(1).

Kauffman, 2006 WL 3017316 at *2. The Court will also revoke a fee waiver order if, based upon a more complete record, it determines that its granting of the waiver was unwarranted, pursuant to Federal Rule of Bankruptcy Procedure 9024 (incorporating Fed. R. Civ. P. 60(b)).[3] The Trustee's motion to reconsider triggered application of this rule because it sought to modify a previously entered order. The Court therefore considered the evidence the Debtor had previously submitted in his application, and provided him an opportunity to supplement the record in view of the Trustee's assertion that the Debtor was, in fact, unable to establish the requisite elements of proof for a fee waiver. Having determined that the Trustee is entitled to reconsideration of the waiver, the Court turns to the merits of the question.

---

[2] Official Form B3B specifically provides that "[t]his Order is subject to being vacated at a later time if developments in the administration of the bankruptcy case demonstrate that the waiver was unwarranted." See Kauffman, 2006 WL 3017316 at * 1.

[3] Fed. R. Civ. P. 60(b) provides six rationales for relief from a judgment or order. Rule 9024(b)(6)/Rule 60(b)(6) allows relief for "any other reason justifying relief from the operation of the judgment." This subsection "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice." Matarese v. LeFevre, 801 F.2d 98, 106 (2d Cir. 1986) (citation omitted). It is properly invoked where there are "extraordinary circumstances" or "where the judgment may work an extreme an undue hardship" and "should be liberally construed when substantial justice will thus be served." Id. Since the granting or vacating of a fee waiver could work an extreme hardship on the Debtor or the Trustee, respectively, the Court

3

Several courts that have addressed fee waivers have applied a case by case totality of the circumstances analysis. In addition to noting whether expenses exceeded income, courts have considered a number of other factors. One important factor has been whether there were any discrepancies between the debtor's application and schedules, culled from a review of the information contained in the debtor's testimony, schedules, statement of affairs, and other pleadings. See In re Robinson, 2006 WL 3498296, * 3 (Bankr. S.D.Ga. July 19, 2006). A second pertinent consideration has been whether the debtor had any collateral sources of income from family or friends to pay the filing fee. See id. at * 3; Burr, 344 B.R. at 237 (denying waiver where debtor lived with boyfriend who provided for her and her infant's needs and where debtor did not indicate total household income or explain why it would not be relevant). Yet another factor has been whether the debtor listed any unreasonable expenses that could be directed to payment of the filing fee. See In re Lineberry, 344 B.R. 487, 492 (Bankr. W.D.Va. 2006) (reasoning that if debtors could afford a $489 purchase for a school ring for their son, they could arrange their financial affairs to pay filing fee and also basing decision on fact that separated co-debtor husband never explained how he spent his portion of federal and state tax refund). The courts have also looked to whether the debtor agreed to pay a portion of the attorney's fees after the filing of the case. See Nuttall, 334 B.R. at 923. Lastly, courts have given attention to whether the debtor had any exempt property that could be used to pay the filing fee, and if so, the value of that exempt property. See Robinson, 2006 WL 3498296 at * 3-5.

The Court observes that while the payment of attorney's fees and the existence and value of exempt property are salient factors in the fee waiver eligibility analysis, these factors should not be determinative of the issue and must be weighed judiciously. Neither one, alone, would be a proper basis for denying an application for a fee waiver. In this regard, the Debtor's counsel brings to the Court's attention an unpublished case (In re Johnson, No. 06-2555 (Bankr. M.D. Tenn. Oct. 4, 2006)) which quoted the Judicial Conference's Interim Procedures regarding the chapter 7 fee waiver provisions:

> The district court or the bankruptcy court should consider the totality of the circumstances in determining whether the debtor is unable to pay the fee in installments as provided for in amended §1930(f)(1) of Title 28, United States Code. Official Form 3B elicits information relevant to this determination. A debtor is not disqualified for a waiver of the filing fee solely because the debtor has paid (or promised to pay) a bankruptcy attorney, bankruptcy petition preparer, or debt relief agency in connection with the filing.

Judicial Conference of the United States Interim Procedures Regarding the Chapter 7 Fee Waiver Provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Promulgated Aug. 11, 2005) (emphasis added) (found at www.uscourts.gov/bankruptcycourts/jcusguidelines.html).

---

deems it appropriate to exercise its discretion, and reconsider the question, in order to render "substantial justice" on this issue.

4

With respect to the factor involving consideration of exempt property, Debtor's counsel makes a valid point when she observes that encouraging the debtor to borrow against his home or automobile so as to pay the filing fee "would seem to contradict Congressional intent" by expecting the debtor "to incur new debt on the eve of filing." Counsel also observes that, "[b]y virtue of 11 U.S.C. § 526(a)(4) counsel is prohibited from advising the debtor that he should incur new debt in contemplation of bankruptcy" (doc. # 17, p. 1). In Robinson, the court stated that assessing the existence of exempt property is a "closer question" than collateral sources of payment and carefully delineated how it would evaluate this factor. In denying the applications of two different individual debtors, the court found that those debtors could borrow against additional unencumbered vehicles registered in their names. The court did not apply this logic to the vehicles the debtors were driving, considering them "essential." Robinson, 2006 WL 3498296 at *4-6. The court denied a third debtor's application because she had a $3,000 account receivable from a mobile home that she had sold, plus $150 in a bank account, in addition to equity in her vehicle and mobile home, leaving an inference that the liquidity of the account receivable was a major factor in the court's denial of the waiver based on the totality of that debtor's circumstances.

This Court submits that additional factors may be considered in the totality of the circumstances determination, such as the amount of debt being discharged, the debtor's historical allocation of net disposable income, and whether the debtor's current or anticipated expenses are the result of extraordinary circumstances.

In In re Bradshaw, 349 B.R. 511 (Bankr. E.D.Tenn. 2006), the bankruptcy court held that where the debtor's schedules established a $222.30 monthly excess of income over expenses, and where there was no allegation that her expenses were unreasonable, the debtor had a more than sufficient amount to pay the filing fee in installments. Id. at 515. The court rejected the debtor's argument that she needed the excess income to pay possible medical expenses or other unforeseen expenses that may arise in the future based on the debtor's failure to carry her evidentiary burden. The court held that the debtor "offered no evidence indicating that such additional expenditures were likely, such as the presence of a medical condition or disability, advanced age, or the need to replace an older automobile." Id. at 516.

In the case at hand, the only evidence offered by the Debtor to support his application for a fee waiver was his testimony, supplemented by documents (the title to his mobile home and his vehicle) contained in his attorney's memorandum of law. While the testimony certainly showed that the Debtor and his wife were living on a very modest budget, his responses to key questions were generally brief and conclusory, and other facts that might have supported his position were not elicited. For example, the Debtor provided no specific testimony with respect to: whether his spouse had any prospect of re-employment; whether his expenses were reasonable; what changes in spending they planned to make when his spouse's unemployment benefits

5

terminated; whether, as a general rule, they spent the money allocated to recreation on recreation or diverted it to pay medical costs or other critical necessities; how long it had taken the Debtor to save the money he used to pay the $400 attorney's fee, and where it had come from in the household budget; how they had typically spent the $97 excess of income over expenses in the recent past; why the Debtor would not be able to allocate this amount to the approximately $100 per month expense of paying the chapter 7 filing fee in installments; what financial sacrifices the Debtor would need to make in order to pay the filing fee in installments; what medical condition his wife has; whether future unanticipated expenses (e.g., medical expenses) would be the result of extraordinary circumstances; and other specific facts which would have supported his conclusory statement that having to pay the filing fee in installments would "strap" him and that for him to pay the fee would be "tight." Debtor's counsel seeks to mitigate those statements by explaining that "it was not made clear" to the Debtor how much those installment payments would be or for what duration (doc. # 17, p. 2). The burden, however, is on the Debtor to show his inability to pay, by a preponderance of the evidence. The fact is, as the Trustee points out (doc. # 14), the Debtor never explicitly testified that he was unable to pay the filing fee.

Here, there were no discrepancies between the Debtor's application and schedules, nor were there any collateral sources of income. While the Debtor possessed exempt property (a mobile home valued at $6,300 and an unreliable car valued at $800), counsel points out that the Debtor could not borrow against his mobile home, as he owned it as a tenancy by the entirety with his non-filing spouse, nor could he borrow against his vehicle, as it appears he does not have clear title to it (doc. #17, pp. 1-2). On the other hand, the Debtor seeks to discharge approximately $11,000, he has an excess of $97 per month of income over expenses, and he failed to establish a factual record sufficient to demonstrate an inability to pay the fee in installments. This failure to meet the burden of proof is dispositive of the matter.

Both the Trustee and the Debtor advance policy arguments in support of their respective positions. The Debtor's attorney argues that if the Court establishes a practice of vacating fee waivers granted to indigent debtors, it will encourage case trustees to seek reconsideration of any waiver granted and that will have a chilling effect on attorneys who represent indigent debtors. While this concern may be well founded, there are constructive strategies available for addressing it. For example, to the extent a debtor's attorney believes the circumstances of a particular case might cause a trustee to challenge the fee waiver, the attorney may certainly supplement the waiver application with additional information to more thoroughly demonstrate the debtor's satisfaction of both prongs of the fee waiver test. This would probably reduce the likelihood of a case trustee moving to vacate a fee waiver and may obviate a special appearance in court and/or the defense of any order granting a waiver by the debtor's attorney. Moreover, the logical extension of this argument would suggest that the Court should deny the trustee's motion, even if the Debtor has not met his burden of

6

proof, in order to discourage trustees in this District from challenging fee waivers they had reason to believe were unwarranted. That is antithetical to the spirit of the new statute. Congress has established a specific two part test for a fee waiver. If the Debtor does not establish its elements by a preponderance of the evidence, he or she must pay the filing fee.

The Trustee's policy argument also focuses on the impact of fee waiver rulings on a narrow constituency of the bankruptcy system: case trustees. He contends that the BAPCPA fee waiver provision is funded on the backs of chapter 7 trustees who receive compensation (only $60.00) for their case administration services only if a debtor pays the filing fee. A number of courts have expressed sympathy with that position. See Bradshaw, 349 B.R. at 516 ("[T]he court is cognizant of the fact that waiver of the filing fee would result in the lack of compensation to the chapter 7 trustee since the trustee is compensated from the filing fee. Thus, this court will not take lightly any request by a debtor to waive the filing fee and will only grant a waiver where the debtor carries her burden. . ."); Robinson, 2006 WL 3498296 at * 2 (observing that the "cumulative effect of a liberal application" of § 1930(f)(1) "could be detrimental to the operation of an effective, transparent and abuse-free system for bankruptcy relief," given that the $60.00 chapter 7 Trustee fee for providing extensive services is "frequently insufficient to cover the true cost of a Trustee's time and effort."). While the Court appreciates the harsh economic realities underscored by the Trustee's policy argument, it cannot be used to justify denial of all fee waiver applications, and cannot supersede the obligation of case trustees and the courts to examine the merits of each fee waiver application on a case by case basis against the statutory criteria.

In sum, both of these policy arguments point to factors that have a direct and real impact on the administration of the bankruptcy system, but they do not affect the outcome of this motion. Such policy arguments are more appropriately addressed to the legislative branch as part of the debate over whether the funding structure of the BAPCPA fee waiver provision is sound public policy.

## Conclusion

For the reasons set forth above, the Court finds that the Debtor did not meet his burden of proving that he was unable to pay the filing fee in installments as required under 28 U.S.C. §1930(f)(1). Accordingly, the Court grants the Trustee's motion to reconsider the order approving Debtor's waiver of the filing fee and vacates the fee waiver.

This constitutes the Court's findings of fact and conclusions of law.

January 12, 2007  
Rutland, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

7